UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SOO REED, Individually and On Behalf of All Others Similarly Situated, §§§§ Plaintiff, §§ v. §§ HAROLD N. KVISLE, CHRISTINE BERGEVIN, DONALD J. CARTY, JONATHAN CHRISTODORO, THOMAS W. EBBERN, BRIAN M. LEVITT, SAMUEL J. MERKSAMER, LISA A. STEWART, HENRY W. SYKES, PETER W. TOMSETT, MICHAEL T. WAITES, CHARLES R. WILLIAMSON, CHARLES M. WINOGRAD, TALISMAN ENERGY INC., and REPSOL S.A., §§§§§§§§§§§§§§§ Defendants. | Civil Action No. 4:14-cv-3710 |

## CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

Plaintiff Soo Reed ("Plaintiff"), by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on personal knowledge, as follows:

### NATURE OF THE CASE

1. Plaintiff brings this class action on behalf of the holders of common shares of Talisman Energy Inc. ("Talisman" or the "Company") against the members of Talisman's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to Repsol S.A. ("Repsol") by means of an unfair process and for an unfair price.

2. On December 15, 2014, Repsol and the Company announced that they had entered into an agreement that will result in Repsol's purchase of all of the Company's

outstanding common shares for $8.00 per share (the "Proposed Transaction"). The Proposed Transaction is valued at $13 billion, including the Company's current debt. The proposed consideration represents a negative premium to the $8.43 average closing price of Talisman stock over the six months leading up to the announcement of the Proposed Transaction.

3. Board members have breached their fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. As described in more detail below, given Talisman's recent strong performance as well as its future growth prospects, the proposed consideration that shareholders will receive is inadequate and undervalues the Company.

4. Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Merger with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the merger agreement dated December 15, 2014 (the "Arrangement Agreement"), Defendants agreed to: (i) a strict no-solicitation provision that requires the Company to terminate any ongoing discussions with other potential acquirers and from pursuing any alternatives to the Merger and (ii) a provision that provides Repsol with five (5) business days to match any competing proposal that might arise.

5. The Individual Defendants have breached their fiduciary duties of loyalty and due care, and Repsol has aided and abetted such breaches by Talisman's officers and directors. Plaintiff seeks to enjoin the Proposed Transaction unless and until Defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), as Plaintiff is a resident of the United Kingdom and no Defendant is a resident of the United Kingdom.

7. The Court has personal jurisdiction over each Defendant because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more Defendant either resides in or maintains executive offices here; and (b) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Talisman. Plaintiff is a citizen of Spain.

10. Talisman is a corporation organized and existing under the laws of Canada. It maintains its principal executive offices at 888 Third Street S.W., Calgary, Alberta. Talisman maintains an office at 2445 Technology Forest Boulevard, The Woodlands, Texas, 77381.

11. Defendant Harold N. Kvisle ("Kvisle") has been a director of the Company since 2010 and has been President and Chief Executive Officer ("CEO") of the Company since September 2012. Kvisle is a citizen of Alberta, Canada.

12. Defendant Christine Bergevin ("Bergevin") has been a director of the Company since 2009. Bergevin is a citizen of Quebec, Canada.

13. Defendant Donald J. Carty ("Carty") has been s a director of the Company since 2009. Carty is a citizen of Texas.

14. Defendant Jonathan Christodoro ("Christodoro") has been a director of the Company since 2013. Christodoro is a citizen of New Jersey.

3

15. Defendant Thomas W. Ebbern ("Ebbern") has been a director of the Company since 2013. Ebbern is a citizen of Alberta, Canada.

16. Defendant Brian M. Levitt ("Levitt") has been a director of the Company since 2013. Levitt is a citizen of Alberta, Canada.

17. Defendant Samuel J. Merksamer ("Merksamer") has been a director of the Company since 2013. Merksamer is a citizen of New York.

18. Defendant Lisa A. Stewart ("Stewart") has been a director of the Company since 2009. Stewart is a citizen of Texas.

19. Defendant Henry W. Sykes ("Sykes") has been a director of the Company since 2013. Sykes is a citizen of Alberta, Canada.

20. Defendant Peter W. Tomsett ("Tomsett") has been a director of the Company since 2009. Tomsett is a citizen of British Columbia, Canada.

21. Defendant Michael T. Waites ("Waites") has been a director of the Company since 2011. Waites is a citizen of British Columbia, Canada

22. Defendant Charles R. Williamson ("Williamson") is a director of the Company and is Chairman of the Board. Williamson is a citizen of California.

23. Defendant Charles M. Winograd ("Winograd") is a director of the Company. Winograd is a citizen of Ontario, Canada.

24. Defendants named in ¶¶ 11 through 23 are collectively referred to herein as the "Individual Defendants" or "the Board."

25. Defendant Repsol is a corporation organized under the laws of Spain, with headquarters in Madrid, Spain. Repsol is an integrated oil and gas company with presence in more than 30 countries.

## DEFENDANTS' FIDUCIARY DUTIES

26. Under Canadian law, the Individual Defendants, as directors of Talisman, are required (a) to act honestly and in good faith with a view to the best interests of the corporation, and (b) in doing so, to exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.

27. Moreover, in any situation where the directors of a corporation undertake a transaction that puts the corporation "in play" (i.e., where it is apparent there will be a sale of equity and/or voting control), directors and/or officers may not take any action that:

    a. adversely affects the value provided to the corporation's shareholders;

    b. will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

    c. contractually prohibits them from complying with their fiduciary duties;

    d. will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

    e. will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

28. In addition, the Individual Defendants, as directors of Talisman, are obligated under Canadian law to:

    a. refrain from engaging in acts or omissions, exercising their powers as directors, or carry on or conduct, or threaten to carry on or conduct, the business and affairs of Talisman in a manner that is oppressive or unfairly prejudicial to the interests of shareholders;

  b. ensure that proper mechanisms are in place when participating in any transaction where the directors' or officers' loyalties are divided so that shareholders are treated fairly;

  c. provide shareholders with enough information to make a reasoned judgment about the issues presented to them;

  d. refrain from participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the Company;

  e. exercise the care, diligence, and skill that a reasonable prudent person with their knowledge and experience would exercise in a comparable circumstance;

  f. refrain from unjustly enriching themselves at the expense or to the detriment of the public shareholders; and/or

  g. refrain from unjustly entrenching themselves as managers and/or officers of the Company by failing to give adequate consideration to legitimate bids for the Company.

29. The Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties and aiding and/or abetting such breaches, including their duties of care, loyalty, good faith, and independence owed to plaintiffs and other public shareholders of Talisman.

30. The Individual Defendants, separately and together, have violated and are continuing to violate the reasonable expectations of the Company's shareholders by oppressive,

unfairly prejudicial conduct insofar as they have deprived Plaintiff and the Class of their reasonable expectation to receive fair value for the shares.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons that own Talisman common shares (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Company's most recent Management Proxy Circular, which it filed with the SEC on March 25, 2014, as of February 28, 2014, more than one billion common shares were represented by the Company as outstanding. All members of the Class may be identified from records maintained by Talisman or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

33. Questions of law and fact are common to the Class, including:

   (i) Whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

   (ii) Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably possible under the circumstances for

      the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

  (iii) Whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

  (iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated;

  (v) Whether Repsol aided and abetted the Individual Defendants' breaches of fiduciary duty; and

  (vi) Whether the Class is entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

34. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

35. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

36. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class, and conflicting adjudications for individual members of the Class might, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Moreover, Defendants have acted or

refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### *Company Background and Its Poise for Growth*

37. Talisman is a global upstream oil and gas company. Talisman has two core operating regions: the Americas, including North America and Colombia, and Asia-Pacific.

38. Beginning in 2012, Talisman undertook a new strategic direction. To effect positive change, the Company appointed new leadership tasked with unlocking value for shareholders in the Company's assets. Such changes included (i) the appointment of Kvisle as President and CEO of the Company, (ii) the addition of Board seats to be filled by individuals who possessed oil and gas experience, and (iii) the divestiture of non-core assets, as discussed below.

39. In a press release issued on July 29, 2014, which announced the Company's financial results for the second quarter of 2014, Kvisle stated of the Company's performance and improvement process: "During the past two years [the Company has] focused [its] efforts and capital on a strong portfolio of long life assets in [its] Americas and Asia-Pacific core regions…. [The Company has] invested to grow production and cash flow from [its] best assets, while working to reduce operating and overhead costs." In the press release, the Company highlighted its production accomplishments, including a total production increase of 4% over the same period in 2013; an increase of production in core regions of 12% over the same period in 2013; an increase in core-region liquids production of 20% year-over-year; and an increase in liquids production in North America of 36% year-over-year. In addition, the Company's cash flow improved 8% year-over-year to $567 million.

40. On November 4, 2014, the Company issued a press release announcing its financial results for the third quarter of 2014. The Company reported net income in the third quarter totaled $425 million and cash flow of $1.7 billion. The Company reiterated its strong 2014 guidance. The Company also highlighted its liquids production in North America, which improved 11% year-over-year.

41. Also, on November 4, 2014, Kvisle and Chief Financial Officer Paul Smith ("Smith") discussed the Company's overall performance and strategy on an analyst conference call. The Company's management expressed confidence in its ability to execute its planned divestitures worth $2 billion by the middle of 2015. Smith stated, "We remain confident in our ability to monetize $2 billion of assets before the middle of next year and our disposition track record over the last five years speaks for itself." Kvisle, discussing falling commodities prices which had affected the Company's financials including its stock price, stated, "We've weathered such times in the past, and we'll do so once again in 2014 and beyond."

42. Indeed, falling oil and gas prices in the second half of 2014 have affected the entire energy sector. An article on the investing website *Seeking Alpha* entitled "Talisman Energy Deal Not Productive For Shareholders," noted the effect that oil prices have had on Talisman's stock, stating, "Talisman Energy was trading at $11.17 on July 23, 2014. The subsequent stock slump came after [the] decline in oil prices." In fact, since July, oil prices have been cut nearly in half—oil prices on July 1, 2014, were above $100 per barrel, but by December 18, they were down to $54.72 per barrel. During the six months leading up to the announcement of the Proposed Transaction, the price of crude oil fell from $107.52 per barrel to $55.96 per barrel, a decrease of 48%. Likewise, during the same time period, Talisman's stock price on the New York Stock Exchange (the "NYSE") fell from $10.71 per share to $5.12 per share, a

decrease of 52%. Nonetheless, the Individual Defendants have decided to sell the Company when its stock is trading at its lowest point since 2003, and its decrease is almost completely attributable to the dramatic decrease in oil prices.

***The Board Breached Their Fiduciary Duties by Entering into the Proposed Transaction for Consideration that Undervalues the Company and Fails to Maximize Shareholder Value***

43. In a press release dated December 15, 2014, the Company announced that it had entered into the Arrangement Agreement, pursuant to which Repsol will acquire all of the outstanding common shares for $8.00 per share. The Proposed Transaction has a total value of $13 billion, including the Company's current debt.

44. Given the Company's strong operational performance and its positioning for growth, the Merger consideration is inadequate and significantly undervalues the Company.

45. Indeed, in January 2014, Reuters reported an attempt by French utility GDF Suez SA to buy Talisman. The offer was reportedly worth $17 billion, including debt. Talisman rejected this offer, which one source described as a "low-ball" offer.

46. Moreover, over the six months leading up to the announcement of the Proposed Transaction, Talisman's common stock averaged $8.43 per share on the NYSE. Accordingly, the proposed consideration represents a negative premium to that six-month average stock price.

47. Finally, the proposed consideration fails to adequately compensate Talisman's shareholders for the significant synergies created by the Proposed Transaction. The Company's December 15, 2014 press release announcing the Proposed Transaction quoted Repsol's chairman Antonio Brufau: "Our combination with Talisman allows us to align our highly complementary portfolios of upstream assets to create a truly global company well-positioned to grow production and reserves. Talisman has strong operational capability, a highly skilled work

11

force and we look forward to leveraging their expertise as we partner to create a stronger, more profitable and competitive organization."

48. Despite the significant synergies inherent in the transaction for Repsol, the Board failed to secure a fair price for either the intrinsic value of the Company's assets or the value of the Company's assets to Repsol.

49. Exacerbating the Board's failure to obtain a fair price for the Company's shareholders is their ongoing relationship with Repsol. The Company first acknowledged Repsol's interest in acquiring the Company in a press release on July 23, 2014, at a time when the Company's stock traded at $11.17 per share. By waiting until the Company stock has depreciated to an artificial low, Repsol seeks to acquire the Company's valuable assets at a significant discount.

50. Repsol is seeking to acquire the Company at the most opportune time, at a time when the Company is performing very well, its stock is at its lowest point in eight years, and is positioned for tremendous growth.

*The Preclusive Deal Protection Devices*

51. In addition, as part of the Arrangement Agreement, Defendants agreed to certain deal protection devices that operate conjunctively to lock-up the Merger and ensure that no competing offers will emerge for the Company.

52. Section 7.2 of the Arrangement Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by the Repsol. Section 7.2(b) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers.

53. Pursuant to § 7.2(f) of the Arrangement Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify Repsol of the bidder's identity and the terms of the bidder's offer. Thereafter, § 7.2(g) demands that should the Board determine to enter into a superior competing proposal, it must grant Repsol five business days in which the Company must negotiate in good faith with Repsol (if Repsol so desires) and allow Repsol to amend the terms of the Arrangement Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

54. In other words, the Arrangement Agreement grants Repsol access to any rival bidder's information and allows Repsol the free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Arrangement Agreement unfairly assures that any "auction" will favor Repsol, which can piggy-back on the due diligence of the foreclosed second bidder.

55. Ultimately, these preclusive deal-protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative Merger that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

56. The Board has called a meeting of the Company's shareholders on February 18, 2015, to vote on the Proposed Transaction.

57. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

### On Behalf of Plaintiff and the Class Against the Individual Defendants for Breach of Fiduciary Duties

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the shareholders of Talisman and have acted to put their personal interests, and the interests of Repsol, ahead of the interests of Talisman shareholders.

60. The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company, which imposes heightened fiduciary responsibilities to maximize Talisman's value for the benefit of the shareholders and requires enhanced scrutiny by the Court.

61. The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders of Talisman because, among other reasons:

(a) they failed to take steps to maximize the value of Talisman to its public shareholders, and instead took steps to avoid competitive bidding;

(b) they failed to properly value Talisman; and

(c) they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

62. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Talisman's assets and will be prevented from benefiting from a value-maximizing transaction.

63. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

64. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### On Behalf of Plaintiff and the Class Against Repsol for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty

65. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

66. Repsol has acted and is acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Talisman shareholders, and have participated in such breaches of fiduciary duties.

67. Repsol knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Repsol rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties

68. Plaintiff and the Class have no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) Declaring this action to be a class action and certifying Plaintiff as the Class representative and her counsel as Class counsel;

(B) Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction; unless or until the Company

adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders.

(C) In the event that the Proposed Transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D) Directing Defendants to account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E) Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

DATED: December 29, 2014.

Respectfully submitted,

_/s/ Thomas E. Bilek_
Thomas E. Bilek
TX Bar 02313525 / SDTX Bar 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, Texas  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Shane T. Rowley
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, New York  10004
Tel: (212) 363-7500
Fax: (866) 367-6510