**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| SOO REED, Individually and On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HAROLD N. KVISLE et al., <br> Defendants. | Civil Action: 4:14-CV-03710 <br><br><br> District Judge Ewing Werlein |

**TALISMAN DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION, *FORUM NON CONVENIENS*, ABSTENTION AND LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

NATURE AND STAGE OF PROCEEDINGS ................................................ 3

FACTUAL BACKGROUND ................................................ 3

ARGUMENT AND AUTHORITIES ................................................ 6

I.      The Court Lacks Subject-Matter Jurisdiction Because Fiduciary Duty Claims Against Directors of Canadian Corporations Must Be Asserted Derivatively ................................................ 6

II.     The Court Should Dismiss This Case Under Forum Non Conveniens Because Canada is a More Appropriate and Convenient Forum ........................... 7

        A.      Canada is an Available and Adequate Alternative Forum ....................... 7

        B.      The Private and Public Interest Factors Overwhelmingly Favor Canada ................................................ 10

III.    The Court Should Alternatively Dismiss or Stay This Action Based on Comity ................................................ 15

IV.     The Court Lacks Personal Jurisdiction Over Talisman and Individual Defendants Bergevin, Christodoro, Ebbern, Kvisle, Levitt, Merksamer, Sykes, Tomsett, Waites, and Williamson ............................................. 16

        A.      Talisman's Contacts with Texas and the United States Are Not Continuous  and Systematic ................................................ 17

        B.      Talisman Is Not Subject to Specific Jurisdiction in Texas ..................... 21

        C.      The Individual Defendants' Contacts Are Insufficient to Give Rise to  Personal Jurisdiction ................................................ 22

CONCLUSION AND PRAYER ................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alcon S'holder Litig.*,
 719 F. Supp. 2d 263 (S.D.N.Y. 2010)................................................................13, 16

*Alert 24 Sec., LLC v. Tyco Int'l, Ltd.*,
 823 F. Supp. 2d 589 (S.D. Tex. 2011) ................................................................20

*BCE Inc. v. 1976 Debentureholders*,
 [2008] 3 S.C.R. 560 ................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007).............................................................................................17

*City of New Orleans Employees' Retirement Sys. ex rel. BP P.L.C. v. Hayward*,
 508 F. App'x 293 (5th Cir. Jan. 16, 2013).....................................................12, 13

*Brinston v. Koppers Indus.*,
 538 F. Supp. 2d 969 (W.D. Tex. 2008).................................................................3

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985).............................................................................................19

*Cooper v. McDermott Int'l, Inc.*,
 62 F.3d 395 (5th Cir. 1995) ................................................................................18

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014)...........................................................................17, 18, 19, 22

*Dalton v. R&W Marine, Inc.*,
 897 F (5th Cir. 1990) ...........................................................................................20

*Davidson v. Exxon Corp.*,
 778 F. Supp. 909 (E.D. La. 1991) .......................................................................14

*DeYoung v. Beddome*,
 707 F. Supp. 132 (S.D.N.Y. 1989)..............................................................9, 14, 16

*Dickson Marine Inc. v. Panalpina, Inc.*,
 179 F.3d 331 (5th Cir. 1999) .........................................................................19, 20

*DTEX, LLC v. BBVA Bancomer, S.A.*,
 508 F.3d 785 (5th Cir. 2007) .........................................................3, 10, 12, 14

# TABLE OF CONTENTS
(continued)

**Page**

*Erie County Employees Retirement Sys. v. Isenberg*,
    2012 WL 3100463 (S.D. Tex. July 30, 2012) (Werlein, J.).......................................6

*Fleeger v. Clarkson Co. Ltd.*,
    86 F.R.D. 388 (N.D. Tex. 1980) ......................................................................12, 15

*Freudensprung v. Offshore Tech. Servs., Inc.*,
    379 F.3d 327 (5th Cir. 2004) ..........................................................................19, 20

*Ghannoum v. Qatar Airways Q.C.S.C.*,
    2014 WL 4354436 (S.D. Tex. Sept. 2, 2014) (Werlein, J.) ..................................7

*Gonzalez v. Bank of America Ins. Servs., Inc.*,
    454 F. App'x 295 (5th Cir. 2011) ..........................................................................20

*Goodyear Dunlop Tires Operations SA v. Brown*,
    131 S. Ct. 2846 (2011)....................................................................................17, 21

*Hargrave v. Fibreboard Corp.*,
    710 F.2d 1154 (5th Cir. 1983) ........................................................................16, 20

*Howe v. Goldcorp Investments, Ltd.*,
    946 F.2d 944 (1st Cir. 1991)..................................................................................9

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..............................................................................................18

*Katt v. Titan Acquisitions, Ltd.*,
    133 F. Supp. 2d 632 (M.D. Tenn. 2000)................................................................7

*Logan Int'l Inc. v. 1556311 Alberta Ltd.*,
    929 F. Supp. 2d 625 (S.D. Tex. 2012) (Atlas, J.) ..................................................8

*Logan Int'l Inc. v. SureTech Completions (USA), Inc.*,
    No. H-13-0492, 2013 WL 3005592 (S.D. Tex. June 10, 2013) (Atlas, J.)...................8, 10, 12

*Luv N'Care, Ltd. v. Insta-Mix, Inc.*,
    438 F.3d 465 (5th Cir. 2006) ................................................................................22

*Marnavi Splendor GMBH & Co, v. Alstom Power Conversion, Inc.*,
    706 F. Supp. 2d 749 (S.D. Tex. 2010) (Werlein, J.)..............................................7

*Martinez v. E.I. DuPont de Nemours & Co.*,
    86 A.3d 1102 (Del. 2014) ......................................................................................15

# TABLE OF CONTENTS
(continued)

**Page**

*Pain v. United Technologies Corp.*,
637 F.2d 775 (D.C. Cir. 1980) ..............................................................................12

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001) ................................................................................17

*Perez & Compania (Cataluna), S.A. v. M/V Mexico I*,
826 F.2d 1449 (5th Cir. 1987) ..............................................................................12

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981).............................................................................................14

*Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*,
127 S. Ct. 1184 (2007)...........................................................................................7

*Stuart v. Spademan*,
772 F.2d 1185 (5th Cir. 1985) ..............................................................................24

*Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*,
796 F.2d 821 (5th Cir. 1986) ..................................................................................7

*Taylor v. LSI Logic Corp.*,
715 A.2d 837 (Del. 1998) ........................................................................................7

*Ungaro-Benages v. Dresdner Bank AG*,
379 F.3d 1227 (11th Cir. 2004) .......................................................................15, 16

*Ungaro-Benages v. Dresdner Bank AG*,
No. 01-2547-CIV, 2003 WL 25729923 (S.D. Fla. Feb. 20, 2003).........................15

*Vasquez v. Bridgestone/Firestone, Inc.*,
325 F.3d 665 (5th Cir. 2003) ..................................................................................7

*Wayne County Employees' Ret. Sys. v. MGIC Inves. Corp.*,
604 F. Supp. 2d 969 (E.D. Mich. 2009)................................................................14

Defendants Talisman Energy Inc. ("Talisman"), Harold N. Kvisle, Christiane Bergevin, Donald J. Carty, Jonathan Christodoro, Thomas W. Ebbern, Brian M. Levitt, Samuel J. Merksamer, Lisa A. Stewart, Henry W. Sykes, Peter W. Tomsett, Michael T. Waites, Charles R. Williamson, and Charles M. Winograd (the "Individual Defendants") (Talisman and the Directors, "Defendants") move to dismiss based on lack of subject-matter jurisdiction, *forum non conveniens*, abstention, and lack of personal jurisdiction as set forth below.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is a purported shareholder class action seeking to obstruct a Spanish company's[1] $8.3 billion acquisition of Talisman, an independent upstream energy company incorporated and headquartered in Canada (the "Transaction").   The Transaction offers Talisman's common shareholders a 56% premium over the stock price the day before the Transaction was announced.

Canadian law vests Canadian courts with exclusive authority to determine whether these types of transactions should be approved and to hear derivative claims for breach of fiduciary duty by shareholders of Canadian companies (which must be brought derivatively under Canadian law with leave of a Canadian court).  A Canadian court has already entered an interim order regarding the Transaction (the "Interim Order"[2]) and has scheduled a special shareholder meeting for February 18, 2015 to vote on the Transaction, with a hearing scheduled for February 20, 2015 to determine whether the Canadian court should enter an order approving the Transaction.  The Interim Order requests "the aid and recognition of any court or any judicial, regulatory or administrative body in Canada and any court or any judicial, regulatory or administrative body of the United States or other country to act in aid of and to assist this Honourable Court in carrying out the terms of this Interim Order."  *See* Ex. 1 to Ex. A ¶ 26.

---

[1] Upon consummation of the Transaction, Talisman would be acquired by TAPBC Acquisition Inc. ("TAPBC"), a wholly owned Canadian subsidiary of a Spanish company called Repsol S.A. ("Repsol").
[2] The Interim Order is attached as Ex. 1 to Ex. A (Declaration of Karen Uehara).

Plaintiff is asking a U.S. court to obstruct a transaction between two foreign companies that is already before a Canadian court. The Transaction is structured as an "arrangement" under Section 192 of the Canada Business Corporations Act ("CBCA"). An arrangement is a statutory procedure under the CBCA that provides, subject to court supervision and approval, a mechanism for companies to effect a broad range of fundamental changes under a single transaction "while ensuring that individuals and groups whose rights may be affected are treated fairly."[3] Under the CBCA, Canadian superior courts are vested with ***exclusive authority*** over the arrangement approval process and the statutory rights and remedies available to shareholders and other stakeholders. In Alberta, the court with exclusive authority over the arrangement approval process for the Transaction is the Court of Queen's Bench of Alberta (the "Alberta Court").[4]

Pursuant to Section 192 of the CBCA, Talisman filed an originating application with the Alberta Court. On January 13, 2015, the Alberta Court issued the 13-page Interim Order directing Talisman to set the February 18, 2015 special meeting and to disseminate an Information Circular (attached as Ex. 2 to Ex. A hereto) to Talisman shareholders. The Interim Order sets forth detailed procedures for conducting the special meeting and provides shareholders who oppose the transaction an opportunity to dissent from the resolution approving the Transaction and to be paid the fair value of their shares based on a judicial determination by a Canadian court under Section 190 of the CBCA. Talisman must also obtain final approval from the Alberta Court before it can consummate the Transaction. Pursuant to the terms of the Interim Order, the application for the Final Order approving the Arrangement is scheduled for February 20, 2015 at the Calgary Courts Centre in Calgary, Alberta. Any shareholder or other interested party who wishes to participate can appear and present evidence for or against the application.

---

[3] Affidavit of David R. J. Lefebvre (the "Lefebvre Affidavit") (Ex. B hereto) ¶¶ 13-15 (quoting *BCE Inc. v. 1976 Debentureholders*, [2008] 3 S.C.R. 560 at para. 128).
[4] Ex. B ¶ 14.

Plaintiff's request for injunctive relief would frustrate the Alberta Court's jurisdiction by preventing Talisman from conducting the special meeting set by the Interim Order.  Allowing Plaintiff's claims to proceed raises the specter of future conflicting judgments, and would violate settled principles of comity and judicial efficiency.

## STATEMENT OF ISSUES TO BE RULED UPON

The Talisman Defendants therefore move to dismiss this case based on lack of subject-matter jurisdiction, *forum non conveniens,* and abstention.  As set forth in the Lefebvre Affidavit (Ex. B hereto), Canadian courts have exclusive jurisdiction over the claims asserted in the Complaint.[5]  The *forum non conveniens* factors overwhelmingly favor Canada.[6]  The Court should alternatively dismiss or stay this litigation on abstention grounds.

In addition, Talisman and multiple directors further move to dismiss for lack of personal jurisdiction based on lack of contacts with Texas – an issue that would be moot if this case proceeded in Canada.  The Talisman Defendants consent to jurisdiction in Calgary.

## NATURE AND STAGE OF PROCEEDINGS

This is a purported shareholder class action that was filed on December 29, 2014.  No Defendant has filed an answer or other responsive pleading.

## FACTUAL BACKGROUND

Talisman is a publicly traded upstream oil and gas company headquartered in Calgary. Compl. ¶ 10.  While Talisman indirectly owns subsidiaries with offices in the United States (including an office in The Woodlands), Talisman itself has no offices or assets in the United States, and Talisman's subsidiaries are not publicly traded.  Ex. A ¶¶ 2, 11-12.

---

[5] *See Brinston v. Koppers Indus.*, 538 F. Supp. 2d 969, 976 (W.D. Tex. 2008) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction").
[6] *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 798 (5th Cir. 2007).

Following a comprehensive strategic review, Talisman engaged two investment banking firms (Goldman Sachs Canada Inc. and Nomura Securities International, Inc.) to provide financial advice regarding a potential corporate transaction. Ex. 2 to Ex. A at 20. Talisman had been impacted by a prolonged decline in natural gas prices, among other things, and was examining options to increase value for its shareholders. To achieve these goals, Talisman's Board of Directors considered numerous potential strategic options during 2013 and 2014, including obtaining new financing, selling certain assets, or a possible sale of the company.

During the spring and summer of 2014, representatives of Talisman met numerous times with representatives of Repsol S.A., a Spanish energy company headquartered in Madrid, to discuss a potential strategic transaction. *Id.* On July 14, 2014, Repsol submitted a written nonbinding indication of interest to acquire Talisman at $13 per common share (a 31% premium over the closing price on July 11, 2014), subject to further due diligence, negotiation of definitive agreements, and final board approval. *Id.* at 21. Talisman's Board thereafter directed senior management to continue discussions with Repsol while simultaneously continuing ongoing discussions regarding the potential sale of a significant portion of Talisman's Asia-Pacific business. *Id.* The Board retained a Canadian law firm (Blake, Cassels & Graydon LLP) as independent legal counsel.

From July 16 to August 1, 2014, further-in-person due diligence sessions were held in Calgary and London to supplement the ongoing due diligence that Repsol was conducting through the Company's electronic data room. On August 1, 2014, Repsol notified Talisman that it had decided not to pursue the contemplated $13-per-share transaction. *Id*. at 21-22. Talisman thereafter continued discussions with Repsol about other potential transactions and continued internal discussions about possible asset dispositions or transactions with other parties beside

Repsol.  *Id.*  In early October 2014, another party contacted Talisman to discuss a variety of potential transactions, including asset purchases and possible joint venture opportunities.  *Id*. at 22. That party provided a written indication of interest on November 11, 2014 for a potential corporate transaction.  *Id.*

In late 2014, Talisman's stock price declined significantly in conjunction with substantial worldwide drop in oil prices.  The stock price fell from a close of $10.54 on August 25, 2014, to a close of $3.69 on December 11, 2014.  *See* Ex. M, Stock Price Chart.

On December 1, 2014, Repsol made a verbal proposal to acquire Talisman for $8 per common share.  Ex. 2 to Ex. A at 22.  The other party that had provided a written indication of interest advised Talisman that it could not remain committed to the price it had indicated and would be unable to make a firm proposal within the time period required by Talisman.  *Id.* Repsol conducted due diligence from December 7-15, 2014.  *Id.*

On December 15, 2014, following additional negotiations and evaluation by Talisman's Board and opinions from the Board's two financial advisors that the transaction was fair from a financial point of view to Talisman's shareholders, Talisman's Board unanimously approved an arrangement agreement ("Arrangement Agreement") memorializing Repsol's agreement for a wholly owned subsidiary of Repsol that is organized under Canadian law to acquire all of Talisman's common shares for $8 (U.S.) per share.  Preferred shareholders, if they participate in the arrangement, will receive $25 (Cdn) together with an amount equal to all accrued and unpaid dividends thereon up to, but excluding, the date of completion of the arrangement.  The $8 price reflected a 56% premium over the $5.12 share price immediately before the Transaction was announced and a greater-than-100% premium over the $3.69 closing price on December 11, 2014, after reports of a potential corporate transaction began to surface.  *See* Ex. M.

As required by Canadian law, Talisman filed an application for approval of the Transaction with the Alberta Court.  *See* Ex. 1 to Ex. A.  On January 13, 2015, the Alberta Court issued its Interim Order directing Talisman to disseminate an Information Circular (attached as Ex. 2 to Ex. A hereto) to Talisman shareholders and scheduling a February 18, 2015 special meeting of shareholders to vote on the Transaction.  *Id.*  The Interim Order sets forth detailed procedures for communicating with Talisman's shareholders and conducting the special meeting. *Id.*  The Alberta Court has scheduled a hearing for February 20, 2015, to determine whether it should grant final approval to the Transaction.

## ARGUMENT AND AUTHORITIES

**I.      The Court Lacks Subject-Matter Jurisdiction Because Fiduciary Duty Claims Against Directors of Canadian Corporations Must Be Asserted Derivatively**

Plaintiff has asserted claims against the directors for breach of their fiduciary duties to Talisman.  Under the internal affairs doctrine, a director's fiduciary duties are governed by the laws of the jurisdiction where the company is incorporated.  *See Erie County Employees Retirement Sys. v. Isenberg*, 2012 WL 3100463, at *3 n.20 (S.D. Tex. July 30, 2012) (Werlein, J.) (applying Bermuda law to company incorporated in Bermuda).  Canadian law thus applies.

Canadian law divests this Court of subject-matter jurisdiction to hear claims for breach of fiduciary duty.  Under the CBCA, Canadian superior courts are vested with ***exclusive authority*** over the arrangement approval process and the statutory rights and remedies available to shareholders and other stakeholders, including shareholder derivative claims under Section 239 of the CBCA.  Under Canadian law, claims for breach of fiduciary duty must be brought derivatively because the duties are owed solely to the corporation.  Lefebvre Aff. ¶ 62.  The CBCA defines "court" – which is used in Section 239 – to mean a Canadian court.  CBCA §2(1). U.S. courts have interpreted the definition of "court" in the CBCA as vesting exclusive

jurisdiction in Canada for claims under the CBCA where the word "court" is used, which would include shareholder derivative claims for breach of fiduciary duty.[7]

## II.     The Court Should Dismiss This Case Under *Forum Non Conveniens* Because Canada is a More Appropriate and Convenient Forum

Defendants alternatively move for dismissal based on *forum non conveniens* because Canada is "an available and adequate alternative forum" and "the balance of relevant private and public interest factors favor dismissal." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). This Court has readily dismissed cases on *forum non conveniens* grounds when the suit concerns a company incorporated or headquartered abroad. *See Ghannoum v. Qatar Airways Q.C.S.C.*, 2014 WL 4354436, at *5 (S.D. Tex. Sept. 2, 2014) (Werlein, J.) (dismissing suit against foreign airline even though pilot was Texas resident); *Marnavi Splendor GMBH & Co, v. Alstom Power Conversion, Inc.*, 706 F. Supp. 2d 749, 758-60 (S.D. Tex. 2010) (Werlein, J.) (dismissing case by German company against French manufacturer).

A court may dismiss on *forum non conveniens* grounds before resolving questions of personal or subject-matter jurisdiction. *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007) ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant").

### A.     Canada is an Available and Adequate Alternative Forum

Canada is plainly an available and adequate forum for this case. As noted above, the Alberta Court is already exercising jurisdiction over the Transaction. *See* Ex. 1 to Ex. A. Talisman and all individual defendants have consented to jurisdiction in Canada. *See Syndicate*

---

[7] *Taylor v. LSI Logic Corp.*, 715 A.2d 837, 840-41 (Del. 1998); *Katt v. Titan Acquisitions, Ltd.*, 133 F. Supp. 2d 632, 635 n.1 (M.D. Tenn. 2000) (noting state court decision dismissing derivative claims against directors of Canadian companies for lack of subject-matter jurisdiction because such claims must be brought in Canada).

*420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir. 1986) (alternative forum can be deemed "available" if defendants voluntarily submit to process there).

The Southern District of Texas has unsurprisingly concluded that the courts of Alberta, Canada are an available and adequate forum in other cases, particularly when (as here) there are already ongoing legal proceedings in Canada relating to the subject matter of the dispute. *See Logan Int'l Inc. v. SureTech Completions (USA), Inc.*, No. H-13-0492, 2013 WL 3005592, at *3-4 (S.D. Tex. June 10, 2013) (Atlas, J.) ("The Court concludes that the Canadian court [in Alberta] is an available and adequate forum for this dispute.  This is true particularly in light of the Canada Lawsuit currently pending there"); *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 632-33 (S.D. Tex. 2012) (Atlas, J.) (same).

Canada is a particularly suitable forum for this suit given that it involves the pending acquisition of a Canadian corporation under Section 192 of the CBCA.  Plaintiff admits that Talisman is incorporated in Canada and openly asserts that her fiduciary duty claims are predicated on "Canadian law" under the internal affairs doctrine.  Compl. ¶¶ 10, 26.  Canadian courts are plainly an adequate forum to consider issues arising from Canadian law.

Additionally, as set forth in the Lefebvre Affidavit, Canada has a sophisticated statutory, regulatory, and judicial enforcement regime for major corporate transactions.  The CBCA contains detailed provisions governing business arrangements such as the Transaction.  Ex. B ¶¶ 13-18.  Pursuant to Section 192 of the CBCA, Talisman must obtain an order from the Alberta Court approving the Transaction.  *Id.* ¶ 15.  The CBCA vests Canadian courts (and, with respect to Alberta, the Alberta Court) with exclusive authority over the arrangement approval process and the statutory rights and remedies available to shareholders.  *Id.* ¶ 14.

U.S. courts have consistently held that Canada's court system and sophisticated body of corporate law provide shareholders an adequate forum for litigating claims under Canadian corporate law. *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944 (1st Cir. 1991) (affirming dismissal of fiduciary duty and federal securities law claims against Canadian corporation and directors on grounds of *forum non conveniens* and stating "trial in Canada will not deprive the plaintiff of relevant legal advantages"); *DeYoung v. Beddome*, 707 F. Supp. 132, 135 (S.D.N.Y. 1989) ("[T]he procedures . . . under the CBCA . . . would seem to be if anything more protective of the rights in this case than the procedures they might expect to encounter in this country.").

The Alberta Court moreover is already exercising jurisdiction.  Talisman filed an originating application with the Alberta Court, which entered the Interim Order setting forth procedures for disseminating notice to the shareholders and conducting the special meeting of shareholders to vote on the Transaction.  Ex. 1 to Ex. A; Ex. B ¶¶ 23-24.  If the shareholder vote is successful, the Alberta Court is scheduled to conduct a final fairness hearing on February 20, 2015, to determine whether the Transaction was made in good faith, whether Talisman has complied with all applicable statutory requirements, and whether the Transaction is fair and reasonable to Talisman's shareholders.  Ex. B ¶¶ 25-35.  The issues raised in Plaintiff's Complaint – including the adequacy of the price offered to shareholders, the fairness and thoroughness of the process, the use of "deal protection devices" such as matching rights, non-solicitation provisions, and a termination fee, and alleged conflicts of interest – are issues that Canadian courts examine in determining whether an arrangement should be approved.  *Id.* ¶ 35.

Canadian law also provides remedies for shareholders that are dissatisfied with the Transaction.  These remedies include the right to dissent and seek a judicial determination of fair value for their shares under Section 190 of the CBCA (*id.* ¶¶ 37-41) and the right to file civil

claims for oppression, shareholder derivative claims for breach of fiduciary duty, claims for misrepresentation, and/or an application under Section 154 of the CBCA alleging that the disclosures in the information circular are deficient (*id.* ¶¶ 42-55).   Again, Canadian law has vested ***exclusive authority*** in the courts of Canada to hear statutory claims for relief against Talisman or its directors based on the CBCA.  *Id.* ¶¶ 14, 50, 53.  Thus, under Canadian law, the only place a Talisman shareholder could pursue CBCA claims is in a Canadian court.

Plaintiffs cannot plausibly argue that Canada is not an adequate and available forum. "'Adequacy' does not require that the alternative forum provide identical relief, either qualitative or quantitative, as an American court." *Logan Int'l*, 2013 WL 3005592, at *3.  As set forth above, shareholders enjoy numerous protections in the Canadian judicial system, which is the exclusive forum for claims by shareholders under the CBCA.  Indeed, the Alberta Court is already adjudicating the fairness, good faith, and statutory compliance of the Transaction.

### B.  The Private and Public Interest Factors Overwhelmingly Favor Canada

The private and public interest factors likewise overwhelmingly support dismissal.  *See DTEX*, 508 F.3d at 798.  As set forth in the Declaration of Karen Uehara (Ex. A hereto), the vast majority of the documents in Talisman's possession relating to the process giving rise to the Transaction, including the relevant negotiation documents, are located at Talisman's headquarters in Canada.  *Id.* ¶ 8.  These documents include board minutes, emails, and hard-copy documents.  *Id.*  Talisman's registered office, minute books and hard copy corporate records are in Calgary.  *Id.*  With respect to the electronic documents, Talisman's SAP (accounting), replications of employee email, and DM (document management) records are maintained on Talisman's Calgary servers.  *Id.*  Talisman's corporate IT group is located in Calgary.  *Id.* Further, Talisman's electronic search program is managed from the Calgary office.  *Id.*

The majority of witnesses with knowledge of the Transaction likewise reside in Canada. Numerous Talisman senior officers who participated in the strategic review preceding the Transaction, as well as the internal and external discussions regarding a potential strategic transaction (including, ultimately, the negotiation of the Transaction), work at Talisman's Calgary headquarters and reside in Alberta. These executives include Harold N. Kvisle (President and Chief Executive Officer), Paul R. Smith (Executive Vice-President, Finance and Chief Financial Officer), and Robert R. Rooney (Executive Vice-President, Corporate). *Id.* ¶ 5. All of these individuals are high-ranking Talisman executives with significant responsibility for managing Talisman's day-to-day business and for shepherding Talisman through the Transaction. Eight of Talisman's 13 directors likewise reside in Canada. *Id.* ¶ 2.

Requiring Talisman's senior management and non-U.S. directors to appear for testimony in Texas would be inconvenient under normal circumstances and would be particularly disruptive given the timetable of the Transaction. *Id.* ¶ 6. It would also be far more inconvenient for Talisman to have its senior executives and Canada-based directors forced to testify in Texas versus having one or two Texas-based outside (non-employee) directors testify in Canada. *Id.*

In addition, many of the outside financial and legal professionals who advised on the Transaction also work and live in Canada. *Id.* ¶ 9. Only one of the numerous meetings relating to the Transaction occurred in Texas, and only one Texas resident (independent director Donald J. Carty, who is not an officer of Talisman) attended that meeting. *Id.* ¶ 10. Canada has a far stronger nexus with the evidence, witnesses, and events relating to the Transaction.

In addition, as stated below, this Court lacks personal jurisdiction over Talisman and multiple individual defendants. The Court may likewise be unable to compel Canadian witnesses from Talisman's outside financial and legal advisors to attend. By contrast, all

Canadian residents and all of Talisman's senior officers and directors are subject to process in Canada.  These problems weigh further in favor of dismissal.  *See  DTEX*, 508 F.3d at 799 (quoting *Perez & Compania (Cataluna), S.A. v. M/V Mexico I*, 826 F.2d 1449, 1453 (5th Cir. 1987)); *see also Pain v. United Technologies Corp.*, 637 F.2d 775, 786-88 (D.C. Cir. 1980) (finding that where most of the documents and testimonial evidence were outside of the United States and were "immune from compulsory process of American courts," if "trial were to be conducted in the United States, the inability of both parties to obtain the full panoply of relevant . . . evidence would greatly hinder fair resolution of the dispute").

Accordingly, the private interests – including the ease of access to proof, the availability of compulsory process, and the ease of travel for willing witnesses – weigh heavily in favor of Canada.  *DTEX*, 508 F.3d at 798.  The other factors – including the possibility of viewing subject premises and all other factors that might make the trial more efficient – are either irrelevant, militate further in favor of Canada or, at worst, are neutral.  *See id.*

The public factors also strongly favor Canada.  *See id.* at 802.  The fact that Plaintiffs' claims are governed by Canadian law weighs in favor of dismissal.  *See City of New Orleans Employees' Retirement Sys. ex rel. BP P.L.C. v. Hayward*, 508 F. App'x 293, 300 (5th Cir. Jan. 16, 2013) (familiarity of English courts with English corporate law weighed in favor of dismissing shareholder suit against directors of English company); *Fleeger v. Clarkson Co. Ltd.*, 86 F.R.D. 388, 393 (N.D. Tex. 1980) (dismissing shareholder derivative suit in favor of Canada and noting that "Plaintiff voluntarily purchased shares in a Canadian corporation which put him on notice that his rights as a shareholder would be construed according to Canadian law").

The fact that the Transaction is already subject to a Canadian court proceeding likewise heavily favors Canada.  *See Logan Int'l*, 2013 WL 3005592, at *3-4 (pendency of related

litigation in Canada weighed in favor of dismissal). Indeed, as noted above, Canadian law vests *exclusive authority* in the Canadian courts for claims under the CBCA, which would deprive putative class members of potential remedies if the case is litigated here. Ex. B ¶¶ 14, 50, 53.

Canada has a particularly strong interest in this case because the fiduciary duties Plaintiff purportedly seeks to vindicate are owed to a Canadian corporation rather than to any U.S. residents. Under Canadian law, directors owe fiduciary duties *only to the corporation itself* (rather than to individual shareholders), so the sole legal issue raised in the Complaint is whether Defendants have breached their duties to a Canadian company. *Id.* ¶¶ 46, 52. Canada has a strong interest in policing merger and acquisition transactions involving companies that are incorporated and headquartered there and enforcing duties owed to Canadian companies. *City of New Orleans*, 508 F. App'x at 300 (England's interest in policing fiduciary duties of English company directors and comparative unfairness of burdening Texas jurors with litigation relating to internal affairs of English company weighed heavily in favor of dismissal).

By contrast, U.S. courts have comparatively little interest in deciding matters of foreign corporate law and have recognized the peril in doing so:

> Specially, as in the instant case, officers and directors of foreign corporations who structure mergers under the laws of their country would do so at their peril, not knowing whether an American court, at the behest of any disgruntled stockholder who feels aggrieved, would subsequently reach into their boardroom and, applying United States law, take issue with who can officially pass upon the merger and how their vote counts, how the shares exchanged in the merger should be properly valued, whether the interests of all shareholders have been sufficiently protected, and whether breaches of fiduciary duty occurred.

*In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 278 (S.D.N.Y. 2010).

Dismissing this case on *forum non conveniens* grounds would also eliminate the risk of inconsistent judgments and would be far more efficient given that the Alberta Court is already

- 13 -

exercising jurisdiction over the Transaction.[8]   This is not simply an academic concern, as Plaintiff's request to enjoin the shareholder vote conflicts with the Alberta Court's Interim Order setting the vote for February 18, 2015.   The Alberta Court has already acted expeditiously in entering the Interim Order and setting the February 20, 2014 final approval hearing.   It would be more efficient to litigate all claims in Alberta rather than through piecemeal litigation here.

All of the public interest factors – (1) the administrative difficulties flowing from and involving court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having a trial in a forum that is familiar with the law that governs the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty – thus point overwhelmingly to Canada.   *DTEX*, 508 F.3d at 802.

The fact that Plaintiff claims to be a Spanish citizen and U.K. resident (Compl. ¶ 9) suing on behalf of a purported worldwide class further undermines Plaintiff's choice of forum.   Where the plaintiff is a foreign national, the assumption that their chosen forum is convenient is "less reasonable" and receives less deference.   *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Additionally, "a plaintiff's choice of forum weighs far less heavily in a case . . . where plaintiffs sue strictly in a representative or derivative capacity."   *DeYoung*, 707 at 138; *see also Wayne County Employees' Ret. Sys. v. MGIC Inves. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) ("The fact that this is a class action weakens the plaintiffs claim for deference to choice of venue further because the class members are not limited to residents of Michigan").

In short, there is not a single private or public interest factor that would militate in favor of retaining this case in Texas.   The Transaction involves the proposed purchase of shares in a

---

[8] *See Davidson v. Exxon Corp.*, 778 F. Supp. 909, 912 (E.D. La. 1991) (transferring case on *forum non conveniens* grounds in part to "eliminate the possibility of inconsistent judgments" and prevent "duplicitous discovery" and the "duplicitous expenditure of judicial effort and resources").

Canadian corporation under Canadian law by a Canadian acquisition subsidiary of a Spanish company that is subject to a Canadian court proceeding.[9]  The vast majority of the witnesses and evidence are in Canada.  The private and public factors weigh heavily in favor of dismissal.  The Court should thus dismiss (or, alternatively, stay) this case on *forum non conveniens* grounds.

## III.     The Court Should Alternatively Dismiss or Stay This Action Based on Comity

Dismissing or staying this action in favor of Canada is also warranted under principles of international comity.  "The principle of comity directs deference to a foreign court of competent jurisdiction . . . so long as the laws and public policy of the forum state . . . and the rights of the forum's residents are not violated."  *Fleeger*, 86 F.R.D. at 392.  "United States courts have abstained from exercising jurisdiction where another sovereign's interest in the proceedings is greater than the United States' interests."  *Ungaro-Benages v. Dresdner Bank AG*, No. 01-2547-CIV, 2003 WL 25729923, at *7 (S.D. Fla. Feb. 20, 2003).  The abstention factors include: (1) the strength of the United States' interest in using a foreign forum; (2) the strength of the foreign government's interest; and (3) the adequacy of the alternative forum.  *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004).

The abstention factors warrant dismissal here.  First, U.S. courts should defer to Canadian courts as to claims involving Canadian corporate governance.  *Martinez v. E.I. DuPont de Nemours & Co.,* 86 A.3d 1102, 1110 (Del. 2014) ("[O]ur courts must acknowledge that important and novel issues of other sovereigns are best determined by their courts where practicable."); *Locals 302 & 612*, 2005 WL 2063852 at *6 ("Canadian courts have consistently held that 'maters of internal management of a corporation and questions affecting the status of a corporation' should be determined by courts in the jurisdiction of the corporation's domicile.").

---

[9] While Talisman and Repsol have subsidiaries that operate in the United States, the Transaction involves the acquisition of the Canadian parent company (Talisman) by a wholly owned Canadian subsidiary of the Spanish parent (Repsol).

As noted above (p. 3), the Alberta Court requested "the aid and recognition" of U.S. courts in carrying out the Interim Order, which would most effectively be achieved through abstention.

Second, Canada has a strong interest in regulating the merger approval process of Canadian corporations. This interest is reflected in the approval process described in the Lefebvre Affidavit. Indeed, U.S. courts recognize Canada's substantial interest in having controversies relating to Canadian corporations decided in Canada. *DeYoung*, 707 F. Supp. at 139 (stating that "[i]t would be highly intrusive for this Court to involve itself" in matters of Canadian corporate affairs). The intrusion is exacerbated when, as here, there is a risk of inconsistent outcomes from multiple proceedings. *See In re Alcon*, 719 F. Supp. 2d at 279 (finding a "substantial risk that inconsistent judgments regarding the same underlying transaction would be entered in the United States and Swiss courts, and that "[t]he risk of such a result weighs strongly in favor of dismissal").

Third, as discussed above, Canada presents an adequate alternative forum. *Ungaro-Benages*, 379 F.3d at 1238 ("[A]dequacy of the alternative forum is informed by *forum non conveniens* analysis."). Accordingly, the Court should dismiss or stay this action.

## IV.   The Court Lacks Personal Jurisdiction Over Talisman and Individual Defendants Bergevin, Christodoro, Ebbern, Kvisle, Levitt, Merksamer, Sykes, Tomsett, Waites, and Williamson

Finally, Talisman and Individual Defendants Bergevin, Christodoro, Ebbern, Kvisle, Levitt, Merksamer, Sykes, Tomsett, Waites, and Williamson additionally and alternatively move to dismiss the claims against them for lack of personal jurisdiction.

As a preliminary matter, Plaintiff failed to fulfill her burden of pleading facts that establish jurisdiction over Talisman and these Individual Defendants. Plaintiff must make a prima facie showing of the facts upon which personal jurisdiction may be based. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Here, Plaintiff has alleged merely a

conclusory statement that each Defendant "either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice." Compl. ¶ 7. Conclusory allegations such as this are insufficient to establish Plaintiff's prima facie case for personal jurisdiction. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). This is a classic "labels and conclusions" allegation that runs afoul of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Not only has Plaintiff failed to plead any facts that give rise to general or specific jurisdiction, but Plaintiffs' own allegations – including that Talisman is a Canadian company and that most of the directors are Canadian citizens – confirm that exercising jurisdiction over these defendants would be inappropriate. The Complaint is bereft of any allegations showing minimum contacts with Texas sufficient to support personal jurisdiction.

Personal jurisdiction is also wholly absent as a factual matter. As noted below, Talisman and the individual movants have filed declarations confirming the absence of sufficient contacts.

A.    **Talisman's Contacts with Texas and the United States Are Not Continuous and Systematic**

Talisman's contacts with Texas (or, for that matter, the United States) are neither continuous nor systematic, and therefore do not give rise to general jurisdiction. Personal jurisdiction arises through either general or specific jurisdiction over the defendant. *Goodyear Dunlop Tires Operations SA v. Brown*, 131 S. Ct. 2846, 2851 (2011). General jurisdiction requires that the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.*; *Daimler AG v. Bauman*, 134 S. Ct. 746,

751 (2014).  For a corporation, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Daimler*, 134 S. Ct. at 760.

Talisman does not fit into either of these paradigms.  It is incorporated in Canada and has its principal place of business in Calgary, Alberta.  Compl. ¶ 10; Ex. A ¶ 2.  Talisman is therefore "at home" in Alberta, not Texas.

Moreover, Talisman's activities in Texas do not rise to such a "continuous and systematic" level as to render jurisdiction in Texas appropriate.  The bar for general jurisdiction over a corporation is high; it must have "continuous corporate operations within a state [that are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities."  *Daimler*, 134 S. Ct.  at 761 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Talisman has no offices, real property, physical assets, or employees in Texas and does not regularly conduct or solicit business in Texas.  Ex. A ¶ 2.  The fact that just two of Talisman's thirteen directors, or less than 1/6 of its board, reside in Texas is not sufficient to confer jurisdiction over the entire corporation in Texas.  *See Cooper v. McDermott Int'l, Inc.*, 62 F.3d 395, at *4 (5th Cir. 1995) ("That fewer than one-fifth of the Board of Directors reside in the forum does not materially advance the argument that International purposefully availed itself of the protections of Texas law.").  Nor is the fact that Talisman's stock is traded on an exchange in the United States and might be owned by Texas residents.  *See id.* ("Even if the residency of the owners of a company's publicly traded stock could conceivably be relevant in personal jurisdiction analysis, the ownership of a small minority of that stock by Texas residents cannot materially further Cooper's argument.").  None of Talisman's own contacts with Texas (or, for that matter, the United States) are sufficient to render it "at home" in Texas.

Jurisdiction also cannot be imputed to Talisman through its indirect U.S.-based subsidiaries. "As a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004). In *Daimler*, the Supreme Court found personal jurisdiction in California lacking over a foreign corporation where its U.S. subsidiary was not a resident of California, even though a significant amount of its sales were in California. "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 134 S. Ct. at 761-62 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The Court also urged consideration of international comity, as general jurisdiction "would not accord with the 'fair play and substantial justice' due process demands." *Id.* at 763.

The presumption of corporate separateness can only be overcome by "clear evidence" of "'something beyond the subsidiary's mere presence within the bosom of the corporate family.' There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). Factors to consider when determining if a subsidiary is the agent of its parent include: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Freudensprung*, 379 F.3d at

346; *see also Hargrave*, 710 F.2d at 1160.  The two entities must be so intertwined as to "fuse the two together for jurisdictional purposes."  *Freudensprung*, 379 F.3d at 346.

For example, in *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990), the Fifth Circuit found that a subsidiary was not the alter ego of the parent, even though the parent owned 100% of the subsidiary's stock, was responsible for the subsidiary's general policy, funneled revenues into centralized bank accounts, and filed consolidated federal tax returns.  *Id.* Those factors were "outweighed" by the parent's observation of corporate formalities, the subsidiary's control over certain daily operations, and the subsidiary's maintenance of separate books and records and filing of its own state tax returns.  *Id.*[10]

Talisman holds interests in corporate entities across the globe, including indirect ownership of corporate entities in the United States. Ex. A ¶ 11, Ex. 3.  One of those entities, Fortuna Energy Holding, Inc. ("FEHI"), is a Delaware corporation wholly owned by a Luxembourg entity, and is separated from Talisman by three degrees of corporate ownership.  *Id.* FEHI maintains its own Board of Directors and officers separate and apart from Talisman's directors and officers.  FEHI has one director [resident in the U.S.] and four officers.  While two of FEHI's officers also are employed by Talisman, FEHI and Talisman maintain their corporate separateness with separate bylaws and corporate governance filings.  *Id.*

FEHI has two direct U.S. subsidiaries: Talisman Energy USA Inc. ("TEUSA") and Talisman Energy Services Inc. ("TESI").  TEUSA is a Delaware corporation with its principal

---

[10] *See also Hargrave*, 710 F.3d at 1161 (no jurisdiction over parent where parent and subsidiary "maintained a degree of corporate separation that was more than superficial; they were two separate corporations joined by the common bond of stock ownership."); *Dickson Marine*, 179 F.3d at 338-39 (plaintiff failed to establish sufficient control by one sibling corporation to establish an alter-ego or agency relationship under *Hargrave* factors); *Gonzalez v. Bank of America Ins. Servs., Inc.*, 454 F. App'x 295, 300-301 (5th Cir. 2011) (ownership of 42% of subsidiary stock was insufficient to impute personal jurisdiction where "there is no evidence or allegation that Loeb has any greater influence over Intersections than would be normal for a significant shareholder in a company."); *Alert 24 Sec., LLC v. Tyco Int'l, Ltd.*, 823 F. Supp. 2d 589, 598 (S.D. Tex. 2011) ("stock ownership alone is insufficient to impute the actions of the subsidiary for the purposes of establishing minimum contacts.").

place of business in Pennsylvania, with offices in New York and Texas.  TEUSA, which has four degrees of corporate separation from Talisman, operates as a separate and distinct corporate entity from both FEHI and Talisman.  It has separate headquarters, its own Board of Directors and officers, its own bylaws, and separate corporate governance filings.  *Id.* ¶¶ 12-13.  TEUSA manages its own budget, employee benefit plans, and governance process.  *Id.* ¶ 13.  Talisman provides certain services to TEUSA pursuant to service contracts between the two entities, including payroll, legal support, and marketing.  *Id.* ¶ 14.  TESI is also a Delaware corporation.  Like TEUSA, TESI maintains its own Board of Directors, bylaws, and corporate governance filings, and has its own employees separate and apart from Talisman.  *Id.* ¶ 15.

FEHI, TEUSA, and TESI are all distinct corporate entities.  Talisman does not exercise sufficient control over these entities for them to be considered Talisman's alter ego or agent.  Therefore, any potential jurisdiction over any one of them in Texas (or the United States) could not be imputed onto Talisman.

### B.      Talisman Is Not Subject to Specific Jurisdiction in Texas

In addition to the lack of general jurisdiction over Talisman, there is no specific jurisdiction over Talisman in relation to the claims alleged by Plaintiff.  Specific jurisdiction requires "an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear*, 131 S. Ct. at 2851.  The three factors to consider in determining whether a defendant has sufficient "minimum contacts" to give rise to specific jurisdiction are: "(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the

exercise of personal jurisdiction is fair and reasonable." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

The overwhelming majority of the actions giving rise to the Transaction occurred outside of Texas and the United States, including the meetings at which the Transaction itself was agreed upon and approved. The majority of the Repsol-Talisman meetings and negotiations and Talisman's internal meetings leading up to the Transaction occurred in Canada or other locations outside of Texas. Ex. A ¶ 10. The Board meetings at which the directors reviewed and approved the Transaction occurred in Canada, not Texas. Ex. A ¶ 10. The upcoming shareholder meeting at which shareholders will vote on the Transaction is scheduled to take place in Calgary. Ex. 2 to Ex. A, at 11. Only one meeting occurred in Texas, in December 2014, involving only a handful of representatives from Talisman and Repsol. Ex. A ¶ 10. It would be neither fair nor reasonable to subject Talisman to jurisdiction in the United States or Texas.

## C.  The Individual Defendants' Contacts Are Insufficient to Give Rise to Personal Jurisdiction

The court similarly lacks personal jurisdiction over most of the Individual Defendants.[11] There is no general jurisdiction over these Individual Defendants in Texas or, for most, in the United States. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 134 S. Ct. at 760. Eight of the Individual Defendants— Bergevin, Ebbern, Kvisle, Levitt, Sykes, Tomsett, Waites, and Winograd—are Canadian residents and have not been U.S. citizens or residents at any relevant time.[12] Their activities in the United States are too minimal to render them "at home" in Texas or anywhere else in the

---

[11] Individual Defendants Carty and Stewart are residents of Texas, and therefore presumptively subject to general jurisdiction in the state.

[12] Compl. ¶¶ 11-12, 15-16, 19-21, 23; Ex. C (Declaration of Christian Bergevin) ¶¶ 2-3; Ex. E (Declaration of Thomas W. Ebbern) ¶¶ 2-3; Ex. F (Declaration of Harold N. Kvisle) ¶¶ 2-3; Ex. G (Declaration of Brian M. Levitt) ¶¶ 2-3; Ex. I (Declaration of Henry W. Sykes) ¶¶ 2-3; Ex. J (Declaration of Peter W. Tomsett) ¶¶ 2-3; Ex. K (Declaration of Michael T. Waites) ¶¶ 2-3.

United States.  None of these Individual Defendants personally own or lease property; have a bank account; maintain addresses or phone numbers in Texas; have been a party to a lawsuit or government enforcement proceeding in Texas; pay federal, state, or local income taxes; or are employed by any company headquartered in Texas.  Ex. C ¶¶ 4-9; Ex. E ¶¶ 44-9; Ex. F ¶¶ 4-9; Ex. G ¶¶ 4-9; Ex. I ¶¶ 4-9; Ex. J ¶¶ 4-9; Ex. K ¶¶ 4-9.  Furthermore, each of these Canadian Individual Defendants physically have visited Texas only a handful of times, unrelated to the claims in this action, not in a "continuous and systematic" nature to render them "at home" in this state.  Ex. C ¶ 11; Ex. E ¶ 11; Ex. F ¶ 11; Ex. G ¶ 11; Ex. I ¶ 11; Ex. J ¶ 11; Ex. K ¶ 11.

Three of the Individual Defendants are American citizens, but are not and have not been residents of Texas at any relevant time—Christodoro, Merksamer, and Williamson.[13]  Compl. ¶¶ 14, 17, 22; Ex. D (Declaration of Jonathan Christodoro) ¶¶ 2-3; Ex. H (Declaration of Samuel J. Merksamer) ¶¶ 2-3; Ex. L (Declaration of Charles R. Williamson).  Their connections to Texas also are too minimal to render them "at home" in Texas.  None of these Individual Defendants own or lease property; have a bank account; maintain addresses or phone numbers in Texas; have been a party to a lawsuit or government enforcement proceeding in Texas; pay federal, state, or local income taxes; or are employed by any company headquartered in Texas.  Ex. D ¶¶ 4-9; Ex. H ¶¶ 4-9; Ex. L.  Each of them only occasionally visit Texas for personal or work-related reasons.  Ex. D ¶ 11; Ex. H ¶ 11; Ex. L.  None of these Defendants have sufficient "continuous and systematic" contacts with Texas to give rise to general jurisdiction.

Even if this Court were to have personal jurisdiction over Talisman (which it does not), that jurisdiction could not be imputed onto the individual directors.  As a general rule, "jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation."  In

---

[13] Christodoro is a resident of New Jersey, Merksamer is a resident of New York, and Williamson is a resident of California.

addition, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual" unless the corporation is the alter ego of the individual.  *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).  Therefore, to the extent these defendants' few contacts with Texas were within the scope of their positions as directors and/or officers of Talisman, personal jurisdiction cannot be exercised over the Individual Defendants themselves solely because of those positions.

Even without the fiduciary shield, the few contacts each Individual Defendant has had with Texas or the United States did not give rise to these claims; therefore, specific jurisdiction is also lacking over each.  While each of the Defendants have had occasional visits and contacts with Texas, both in their personal capacities and in their capacity as directors of Talisman, none of those contacts gave rise to the claims asserted by Plaintiff in this action.[14]  Only one meeting related to the Transaction occurred in Texas, and only one Individual Defendant (Williamson) was present at that meeting.  Ex. A ¶ 10.  Neither of those meetings resulted in the individuals in attendance purposefully availing themselves of the protections of this jurisdiction, neither meeting gave rise to the specific allegations raised in the Complaint, and it would not be fair or reasonable to exercise jurisdiction over any of these individual defendants in Texas as a result of these fleeting contacts with the state.

## CONCLUSION AND PRAYER

Defendants pray that the Court dismiss or stay this case as set forth above, dismiss the claims against those Defendants for which personal jurisdiction is lacking, and award all other relief to which Defendants are justly entitled.

---

[14] In their capacities as directors for Talisman, each of the Individual Defendants attended a board meeting in Texas in October 2013, which was unrelated to the Transaction.  Ex. A ¶ 10.

Respectfully submitted,

s/ Gerard G. Pecht
Gerard G. Pecht (Attorney-in-Charge)
State Bar No. 15701800
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

Peter A. Stokes
State Bar No. 24028017
Fulbright & Jaworski L.L.P.
600 Congress Ave., Suite 2400
Austin, Texas 78701-2978
Telephone:  (512) 536-5287
Telecopier:  (512) 536-4598

*Attorneys for Talisman Energy Inc., Harold N. Kvisle, Christiane Bergevin, Donald J. Carty, Jonathan Christodoro, Thomas W. Ebbern, Brian M. Levitt, Samuel J. Merksamer, Lisa A. Stewart, Henry W. Sykes, Peter W. Tomsett, Michael T. Waites, Charles R. Williamson, and Charles M. Winograd*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on January 22, 2015, which caused an electronic copy of this document to be served on counsel for Plaintiffs.

s/ Gerard G. Pecht
Gerard G. Pecht

- 25 -